UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

Adam Nail,

    Plaintiff

v.

Lens.com, et al.,

    Defendants

Case No.: 2:24-cv-01149-JAD-EJY

**Order Granting Defendant's Motion to Dismiss in Part with Leave to Amend**

[ECF No. 46]

Plaintiff Adam Nail sues Lens.com and ten "Doe" defendants on behalf of a putative class, alleging that Lens.com deliberately conceals extra fees added to purchases made on its website, violating the California Consumers Legal Remedies Act, California's False Advertising Law, and California's Unfair Competition Law. Lens.com moves to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that Nail's claims are barred by a choice-of-law provision in the Lens.com website's terms of use, that Nail's requests for equitable relief are inadequately pled, and that Nail lacks Article III standing for injunctive relief. Because I find that Nail hasn't pled facts to support any of his equitable relief requests, I grant Lens.com's motion to dismiss his requests for injunctive relief, restitution, and disgorgement with leave to amend, but I deny the motion in all other respects.

**Background**[1]

Nail purchased contact lenses from the Lens.com website twice: once in January 2021 and again in November 2022.[2] He alleges that Lens.com surreptitiously adds an extra charge to purchases made on its website.[3] According to Nail, Lens.com deliberately hides this additional fee to make the actual cost of a purchase 50–80% higher than the advertised price.[4]

A consumer who clicks on a Lens.com advertisement (on Google or another search engine) will see the advertised price displayed on the Lens.com website as he views the product page, enters information about his prescription, and checks his "shopping cart."[5] But a "taxes & fees" charge then appears on the shipping-information page, beneath a "continue" button.[6] Nail asserts that this added charge is entirely a "processing fee," but a consumer can only learn that by requesting a "Full Receipt" from a Lens.com customer representative.[7] Nail doesn't specify whether he was aware of the fee before completing his purchases, though he alleges that he and other similarly situated Lens.com customers have been "misled and unfairly induced to pay hidden fees" by this "bait and switch scheme."[8]

So Nail filed this suit against Lens.com on behalf of himself and a putative class of consumers, alleging violations of the California Consumers Legal Remedies Act (CLRA),

---

[1] This is merely a summary of facts alleged in Nail's complaint, ECF No. 1-1, and should not be construed as findings of fact.
[2] ECF No. 1-1 at 22.
[3] *Id.* at 3.
[4] *Id.* at 2.
[5] *Id.* at 5–6, ¶¶ 15–19.
[6] *Id.* at 8, ¶ 22 (cleaned up).
[7] *Id.* at 9–10, ¶ 24.
[8] *Id.* at 14, ¶ 47.

California's False Advertising Law (FAL), and California's Unfair Competition Law (UCL) in California state court.[9] Lens.com removed the matter to the Central District of California and then successfully moved to transfer it to this court.[10] Lens.com now moves to dismiss Nail's complaint under Federal Rule of Civil Procedure (FRCP) 12(b)(6), arguing that he fails to state a plausible claim because his California-law-based claims violate the choice-of-law provision in Lens.com's terms of use. It offers additional arguments for dismissal of Nail's requests for equitable relief, asserting that they are inadequately pled and that Nail lacks Article III standing to seek injunctive relief.[11]

## Discussion

Federal pleading standards require a complaint to include enough factual detail to "state a claim to relief that is plausible on its face."[12] The plaintiff must make direct or inferential factual allegations about "all the material elements necessary to sustain recovery under *some* viable legal theory," and a complaint that fails to meet this standard must be dismissed.[13] When evaluating a Rule 12(b)(6) motion to dismiss, the court must accept as true all well-pled allegations in the complaint, recognizing that legal conclusions are not entitled to the assumption of truth.[14]

---

[9] *Id.* at 2.
[10] ECF No. 1; ECF No. 34.
[11] ECF No. 46 at 22–24.
[12] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
[13] *Id.*
[14] *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

3

**A.      The choice-of-law provision in Lens.com's terms of use doesn't apply to Nail's claims.**

Lens.com argues that Nail has failed to state a plausible claim under Rule 12(b)(6) because his claims, which are based in California law, are barred by the choice-of-law provision in the Lens.com website's terms of use.[15] That choice-of-law provision consists of a single sentence that reads: "These Terms and Conditions of Use shall be governed by and construed in accordance with the laws of the State of Nevada."[16] Nail responds that this provision, by its own plain language, narrowly applies to the terms of use themselves and does not bar these statutory claims.[17]

*1.      The Lens.com choice-of-law provision does not bar Nail's California claims.*

Lens.com relies on *Tuxedo International Inc. v. Rosenberg* to support his argument that the choice-of-law provision bars Nail's claims.[18] In *Tuxedo*, the Nevada Supreme Court established a three-step framework to determine whether tort-law claims fall within the scope of a forum-selection and choice-of-law clause in the parties' related contract.[19] Lens.com applies the *Tuxedo* framework to the choice-of-law provision in its terms of use, concluding that Nail's claims fall within the scope of the provision at each step.[20] Nail responds that *Tuxedo* is

---

[15] ECF No. 46 at 6.
[16] ECF No. 46-3 at 14–15.
[17] ECF No. 47 at 2.
[18] ECF No. 46 at 9–20.
[19] *Tuxedo Int'l Inc. v. Rosenberg*, 251 P.3d 690, 699–700 (Nev. 2011).
[20] ECF No. 46 at 10.

inapplicable because his claims are entirely based in California consumer-protection law and thus not "arguably related" to the Lens.com terms of use.[21]

Under *Tuxedo*, the court must first evaluate whether the parties intended for tort claims to be governed by a choice-of-law clause in a related contract between them.[22] This evaluation "must involve a careful and thorough study of the clause itself."[23] If the clause itself doesn't yield a clear answer, then the court must consider whether the tort claims relate "to the interpretation of the contract."[24] If the issue is still unresolved, the final inquiry is whether the tort claims "involve the same operative facts as a parallel breach-of-contract claim."[25] But the court should only proceed beyond the first step if the intent of the parties is ambiguous.[26]

Due to the simplicity of the Lens.com choice-of-law clause, the *Tuxedo* analysis here begins and ends at step one. The plain meaning of this provision in the Lens.com website's terms of use, which states that the "Terms and Conditions of Use shall be governed by" Nevada law,[27] is that the terms of use themselves are governed by Nevada law. Lens.com points to broad liability-limiting language elsewhere in the terms of use,[28] but the choice-of-law provision is self-contained and unambiguous. It does not reasonably indicate that tort claims arising from an interaction with the Lens.com website must be brought under Nevada law. So I cannot conclude that the choice-of-law provision bars Nail's California claims here.

---

[21] ECF No. 47 at 9.
[22] *Tuxedo Int'l Inc.*, 251 P.3d at 699.
[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] ECF No. 46-3 at 14–15.
[28] ECF No. 46 at 11–12.

## 2. The California Supreme Court's opinion in <u>Nedlloyd Lines B.V. v. Superior Court</u> is too distinguishable to follow here.

Lens.com also invokes *Nedlloyd Lines B.V. v. Superior Court*,[29] in which the Supreme Court of California found that the language in a choice-of-law clause providing that it "governs the agreement" between the parties meant that the clause applied to all claims arising from or related to that contract.[30] Because the Lens.com terms of use employ similar "governed by" language, Lens.com argues that *Nedlloyd*'s rationale should persuade this court to apply its choice-of-law provision to "all causes of action arising from or relating to the [Lens.com] website's terms of use."[31] Nail responds that *Nedlloyd* is inapplicable because it involves claims that clearly arose from the contract containing the choice-of-law clause, while his claims do not arise from the Lens.com terms of use.[32]

The language of the two choice-of-law provisions is similar—the *Nedlloyd* provision states that "[t]his agreement shall be governed and construed in accordance with Hong Kong law," and the Lens.com provision declares that the terms of use "shall be governed and construed in accordance" with Nevada law. But the contracts in which they are contained play materially different roles in the claims. In *Nedlloyd*, the choice-of-law clause was included in a "fully negotiated"[33] shareholders' agreement between "two sophisticated, commercial entities."[34] The plaintiff sued the defendant for breach of the "express and implied obligations of the

---

[29] *Id.* at 13.
[30] *Nedlloyd Lines B.V. v. Superior Court*, 834 P.2d 115 (Cal. 1992) (cleaned up).
[31] ECF No. 46 at 13.
[32] ECF No. 47 at 12.
[33] *Nedlloyd Lines B.V.*, 834 P.2d at 1155.
[34] *Id.* at 1150.

shareholders' agreement," including claims for breach of contract and breach of the implied covenant of good faith and fair dealing.[35] But Nail pleads only statutory tort claims. His complaint never references the Lens.com terms of use nor invokes any contractual relationship between the parties.[36] So while the *Nedlloyd* claims unambiguously arose from the contract containing the choice-of-law clause; the same cannot be said of Nail's consumer-protection suit. So I find that *Nedlloyd* is materially distinguishable and decline to apply its ruling or rationale here.

**B.     Nail's claims do not fail the reasonable-consumer test.**

Claims brought under the CLRA, UCL, and FAL are governed by the reasonable-consumer test.[37] Essentially, plaintiffs suing under these California statutes must show that "members of the public are likely to be deceived" by the advertisement at issue.[38] Under the reasonable-consumer test, advertising is considered misleading if "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."[39] Advertisements must be evaluated "from the vantage of a reasonable consumer,"[40] and the "touchstone" of the test is whether the advertisement at issue has a "meaningful capacity to deceive customers."[41]

---

[35] *Id.*

[36] *See* ECF No. 1-1.

[37] *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)

[38] *Id.* (quoting *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)).

[39] *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co.*, 129 Cal. Rptr. 2d 486, 495 (Cal. App. 2003)).

[40] *Williams*, 552 F.3d at 938 (quoting *Lavie*, 129 Cal. Rptr. 2d at 494).

[41] *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023).

The parties agree that Nail's claims are all governed by the reasonable-consumer test but disagree whether they meet the requirements of that test.[42] Lens.com contends that Nail's claims fail the reasonable-consumer test because the processing fee is disclosed before checkout and a reasonable consumer would notice a change in the total price before completing a purchase.[43] Nail responds that the vague disclosure of "taxes & fees" in the fifth step of the order process isn't enough to put a reasonable Lens.com customer on notice of the processing fee.[44]

The Eastern District of California's decision in *Watson v. Crumbl LLC*[45] is persuasive and helps illustrate the proper application of the reasonable-consumer test to Nail's complaint. The *Watson* plaintiffs sued gourmet-cookie retailer Crumbl for adding a service fee to purchases, alleging violations of the CLRA, FAL, and UCL, among other claims.[46] Crumbl app users could only discover the service fee by clicking on a "?" icon next to the "Taxes & Fees" line on the payment screen.[47] The district court held that the fee had not been clearly disclosed and that a reasonable consumer could be misled by the "Taxes & Fees" line item.[48] It also noted that courts rarely dispose of claims based on the reasonable-consumer test at the motion-to-dismiss stage.[49]

Nail has pled sufficient facts to survive a reasonable-consumer test dismissal at this nascent stage in this litigation. He has alleged that Lens.com, like Crumbl, displays the added

---

[42] ECF No. 46 at 21; ECF No. 47 at 17.
[43] ECF No. 46 at 26.
[44] ECF No. 47 at 18–21 (cleaned up).
[45] *Watson v. Crumbl LLC*, 2024 WL 3010880 (E.D. Cal. June 10, 2024).
[46] *Id.* at *2.
[47] *Id.* at *1.
[48] *Id.* at *6–7.
[49] *Id.* at *6.

8

fee just once during the checkout process and labels that charge as "taxes & fees."[50] He explains that consumers can learn that these taxes and fees are a "processing fee" only by requesting a "Full Receipt" from a Lens.com customer representative.[51] So I also deny Lens.com's motion to dismiss based on the reasonable-consumer test.

**C.    Nail hasn't pled facts to support his requests for equitable relief.**

   *1.    Nail hasn't shown that he is at risk of future injury, so he hasn't established Article III standing for injunctive relief.*

Lens.com moves to dismiss Nail's requests for injunctive relief, arguing that he hasn't shown any risk of future harm to warrant such relief.[52] "Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief."[53] So a plaintiff must separately establish standing for each form of relief that he seeks,[54] and "[t]o seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury."[55] Past harm alone is insufficient to meet Article III standing requirements for injunctive relief, though it can be evidence of a threat of future injury.[56]

---

[50] ECF No. 1-1 at 2 (cleaned up).
[51] *Id.* at 9–10, ¶ 24.
[52] ECF No. 46 at 23–24.
[53] *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999).
[54] *Friends of the Earth, Inc. v. Laidlaw Env't Serv. (TOC), Inc.*, 528 U.S. 167, 185 (2000).
[55] *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).
[56] *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

9

The Ninth Circuit's decision in *Davidson v. Kimberly-Clark Corp.* illustrates when a consumer-fraud plaintiff may have standing to seek injunctive relief.[57] In that case, a consumer bought wipes labeled as flushable but later learned that they were not actually suitable for flushing down toilets.[58] The *Davidson* court held that "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase."[59] Even though the consumer had not purchased the wipes again,[60] the Ninth Circuit reasoned that her "inability to rely on the validity of the information advertised" by the defendant satisfied the injury requirement of Article III standing.[61]

Unlike the *Davidson* consumer, Nail hasn't plausibly alleged future harm. In fact, his complaint says nothing about any risk of any future injury.[62] Nail's past harm isn't enough to establish Article III standing to seek injunctive relief, so I dismiss his request for injunctive relief with leave to amend it if he can plausibly allege true facts showing a risk of future harm.

### 2. *Nail's request for restitution is dismissed because he hasn't shown that he lacks an adequate legal remedy.*

In his prayer for relief, Nail seeks restitution in addition to damages and any other "just and proper" relief.[63] Lens.com asserts that Nail's request for restitution must be dismissed

---

[57] *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018).
[58] *Id.* at 962.
[59] *Id.* at 969.
[60] *Id.*
[61] *Id.* at 971.
[62] *See* ECF No. 1-1.
[63] *Id.* at 18.

because his complaint doesn't allege that legal remedies could not make him whole, citing the Ninth Circuit case *Sonner v. Premier Nutrition Corporation*.[64]  Nail retorts that *Sonner* doesn't preclude him from requesting restitution as alternative relief as permitted by FRCP 8.[65]

The *Sonner* court held that a federal plaintiff must "establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA."[66] In *Sonner*, the Ninth Circuit considered an appeal by the named plaintiff of a putative class action concerning a dietary supplement beverage memorably named "Joint Juice."[67]  A district court dismissed the suit because it sought only equitable relief without establishing that legal remedies were inadequate.[68]  The Ninth Circuit affirmed the lower court's ruling, finding that plaintiffs suing under the UCL and CLRA must establish that they lack adequate remedies at law before receiving equitable restitution for past harm.[69]

But FRCP 8(d)(2) allows plaintiffs to "set out 2 or more statements of a claim or defense alternatively or hypothetically."[70]  While there is no binding precedent delineating the relationship between that rule and *Sonner*, another judge in this district persuasively addressed the issue in *Smallman v. MGM Resorts International*.[71]  In *Smallman*, consumers affected by a data breach of MGM Resorts International's network filed a class action complaint asserting,

---

[64] ECF No. 46 at 22–23.
[65] ECF No. 47 at 22.
[66] *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841 (9th Cir. 2020).
[67] *Id.* at 837.
[68] *Id.* at 838.
[69] *Id.* at 844.
[70] Fed. R. Civ. P. 8(d)(2).
[71] *Smallman v. MGM Resorts Int'l*, 638 F. Supp. 3d 1175 (D. Nev. 2022).

11

among a myriad of other claims, violation of the UCL and the CLRA.[72]  MGM moved to dismiss the plaintiffs' request for equitable relief, arguing that it was barred because adequate legal remedies were available.  The plaintiffs argued that they could seek equitable relief in the alternative under FRCP (8)(d)(2).  The *Smallman* court concluded that FRCP 8(d)(2) doesn't eliminate the *Sonner* requirement that plaintiffs suing for equitable relief under the UCL and CLRA must show that they lack legal remedies.[73]  So despite their general ability to plead in the alternative, plaintiffs must nevertheless "allege that there is no adequate remedy at law for their [equitable remedy requests] to proceed."[74]

I agree with the *Smallman* court's reasoning that FRCP 8(d)(2) doesn't invalidate the *Sonner* requirement.  And Nail has not alleged that legal damages would be inadequate.[75]  In fact, he's seeking damages in addition to restitution.[76]  Nail's restitution request thus runs afoul of *Sonner*, so I dismiss his restitution request with leave to amend if he can establish that legal remedies would be inadequate.

### 3. *Lens.com's unopposed argument to strike Nail's request for disgorgement is granted.*

As its final challenge, Lens.com notes Nail's "vague references to disgorgement" in the complaint and insists that any equitable claim for disgorgement and any related unjust-enrichment claims under the UCL must be dismissed.[77]  Nail does not respond to this

---

[72] *Id.* at 1186.
[73] *Id.* at 1197.
[74] *Id.* at 1197–98.
[75] *See* ECF No. 1-1.
[76] *Id.* at 17–18.
[77] ECF No. 46 at 24.

argument.[78] Nail doesn't include disgorgement in his prayer for relief,[79] but he does allege that he is entitled to disgorgement under two of his causes of action.[80] This court's Local Rule 7-2(d) provides that "[t]he failure of an opposing party to file points and authorities in response to any motion, except a motion under Fed. R. Civ. P. 56 or a motion for attorney's fees, constitutes a consent to the granting of the motion."[81] I apply this rule, deem the plaintiff's failure to respond to Lens.com's argument as consent to granting it, and dismiss Nail's disgorgement requests.

### 4. The court grants Nail limited leave to amend his complaint.

FRCP 15(a) advises that "leave [to amend] shall be freely given when justice so requires."[82] District courts consider the following factors to determine if leave to amend should be granted: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) whether the plaintiff has previously amended the complaint, and (5) futility of amendment.[83] But absent "apparent or declared" futility, a factually supported showing of prejudice, or a heavy influence of the other factors, there is a strong presumption in favor of permitting amendment.[84] I do not find those circumstances here, so I grant Nail leave to amend his complaint to supplement the facts supporting his requests for equitable relief as explained supra.

---

[78] *See* ECF No. 47.
[79] ECF No. 1-1 at 17–18.
[80] *Id.* at 16, ¶ 58; *id.* at 17, ¶ 66.
[81] Local Rule 7-2(d).
[82] Fed. R. Civ. P. 15(a).
[83] *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004).
[84] *Foman v. Davis*, 371 U.S. 178, 182 (1962).

**Conclusion**

IT IS THEREFORE ORDERED that Lens.com's motion to dismiss **[ECF No. 46] is GRANTED IN PART**.  Nail's requests for injunctive relief, restitution, and disgorgement are dismissed with leave to amend by **October 31, 2024**.

_____
U.S. District Judge Jennifer A. Dorsey
October 11, 2024